# United States Court of Appeals for the Federal Circuit

---

**IN RE CITY OF HOUSTON**

---

2012-1356

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in Serial No. 77/660,948.

- - - - - - - - - - - - - - - - - - - - - -

**IN RE THE GOVERNMENT OF THE DISTRICT OF COLUMBIA**

---

2012-1418

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in Serial No. 77/643,857.

---

Decided: October 1, 2013

---

MARK G. CHRETIEN, Greenberg Traurig, LLP, of Houston, Texas, argued for appellant in No. 2012-1356. With him on the brief were BEN D. TOBOR and ANTHONY F. MATHENY.

BINGHAM B. LEVERICH, Covington & Burling, LLP, of Washington, DC, argued for appellant in No. 2012-1418. With him on the brief were HOPE HAMILTON, PETER D. TROOBOFF and MARIE A. LAVALLEYE.

CHRISTINA HIEBER, Associate Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, argued for all appellees. With her on the brief were THOMAS L. CASAGRANDE, Associate Solicitor; and AMY P. COTTON, Senior Counsel Office of Policy and External Affairs. Of counsel was NATHAN K. KELLEY, Deputy Solicitor.

---

Before LOURIE and PLAGER, *Circuit Judges*, and
BENSON\*, *District Judge.*

PLAGER, *Circuit Judge.*

This is a combined opinion in two cases on appeal from the Director of the United States Patent and Trademark Office (hereafter Director or PTO). Both cases raise a question of first impression—under the provisions of the Lanham Act, may a local government entity obtain a federal trademark registration for the entity's official insignia. The "Lanham Act" is the commonly used name for the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 et seq., and references to the Act in this opinion will use that common name and section designators. We use the term "official insignia" as a short-hand reference to the various types of insignia listed in the relevant provision of the Lanham Act; the specific piece of insignia for which registration is sought in both cases is the government entity's official seal.

---

\*    Honorable Dee V. Benson, United States District Court for the District of Utah, sitting by designation.

The City of Houston (Houston) appeals from a final decision of the Trademark Trial and Appeal Board (the Board) on behalf of the Director that concludes that § 2(b) of the Lanham Act (*see* 15 U.S.C. § 1052(b)) prohibits Houston from registering its city seal on the federal register. The Government of the District of Columbia (the District) separately appeals from a similar final decision of the Board refusing to register the District's official seal on the basis of § 2(b).

We address Houston's and the District's appeals together as both require us to interpret the same provision of the Lanham Act. We conclude that the Board correctly interpreted § 2(b) as prohibiting Houston and the District from registering their seals, and therefore *affirm* both of the Board's final decisions.

## BACKGROUND

Houston seeks to register its city seal, shown below, as a trademark in connection with various municipal and city services, including commerce, tourism, business administration, and public utility services.



To apply for federal registration, Houston filed Trademark Application Serial No. 77/660,948 with the U.S. Patent and Trademark Office (PTO) on February 1, 2009.

After reviewing Houston's application, the PTO's examining attorney refused to register Houston's seal in

light of § 2(b) of the Lanham Act. Section 2(b) prevents applicants from registering a proposed trademark that "[c]onsists of or comprises the flag or coat of arms or other insignia of the United States, or of any State or municipality, or of any foreign nation, or any simulation thereof." 15 U.S.C. § 1052(b). Houston appealed the examining attorney's refusal to the Board.

In its appeal, Houston argued that because it was a government entity seeking to register its own seal, Houston did not fall under the prohibition of § 2(b). The Board disagreed, concluding that the prohibition of § 2(b) is clear and applies to Houston. As a result, the Board issued a final decision affirming the examining attorney's refusal to register Houston's seal. Houston appealed the Board's final decision to this court.

Like Houston, the District sought to register its official seal (shown below) on the federal register. The District filed Application Serial No. 77/643,857 to cover a variety of items, such as shirts, pens, cups, and hats.



The examining attorney refused to register the District's seal due to the prohibition set forth in § 2(b). The District appealed the examining attorney's refusal to the Board and argued, *inter alia*, that the examining attorney's interpretation was inconsistent with the treaty obligations of the United States negotiated in the Paris Convention of 1883. After a remand to address the District's request to supplement the record, the Board issued a final

decision affirming the examining attorney's refusal to register the District's mark.

The Board concluded that § 2(b) bars the District from registering its official seal. In the course of its opinion, the Board opined that nothing in the legislative history or the provisions of the Paris Convention highlighted by the District indicates that an alternative construction of § 2(b) is called for. The District appealed to this court.

We have jurisdiction over both appeals under 15 U.S.C. § 1071(a)(1) and 28 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

The Lanham Act in section 2 allows an applicant to register its mark on the principal register but only if the mark complies with the provisions of the Act:

> No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it . . .

This introductory authorization is followed by five specific exceptions, the second (subsection (b)) of which states:

> Consists of or comprises the flag or coat of arms or other insignia of the United States, or of any State or municipality, or of any foreign nation, or any simulation thereof.

15 U.S.C. § 1052(b).

As noted, the present appeals raise an issue of first impression: whether § 2(b) of the Lanham Act bars a local government entity, such as Houston and the District, from registering its own insignia. Though both appellants argue in favor of their common position that § 2(b) does not bar such registrations, the appellants present quite different theories for that result.

The Board concluded that neither theory prevails, and that § 2(b) does prohibit registration of the appellants' seals. We review the Board's legal conclusions, including its interpretation of the Lanham Act, without deference. *In re Int'l Flavors & Fragrances, Inc.*, 183 F.3d 1361, 1365 (Fed. Cir. 1999). We address each of the appellant's theories in turn.

## A. City of Houston Appeal

Houston argues that it should be allowed to register its city seal because, as a government entity, it is not an "applicant" prohibited by § 2(b). To arrive at this construction of "applicant," Houston refers to the definitions section provided in § 45 of the Act, 15 U.S.C. § 1127. This section defines "any . . . word or term used to designate the applicant" as including a "juristic person," which includes any "organization capable of suing and being sued in a court of law." *Id.* Houston focuses on the section's introductory sentence, which states that the definitions apply "unless the contrary is plainly apparent from the context." *Id.* Houston then argues that the *context* of § 2(b) suggests that Congress intended "applicant" to mean something different than a government entity seeking to register its own seal.

To establish context, Houston turns to policy arguments and the Lanham Act's legislative history. Houston argues that government entities use their official insignia to identify their goods and services, and unauthorized use of these insignia confuses the public about the government entities' approval of the goods or services. Houston also contends that the Board's construction of § 2(b) is at odds with the Lanham Act's goal of protecting the public from "pirates and cheats." H.R. Rep. No. 79-219, at 2 (1945).

The Director of the PTO responds that § 2(b) unambiguously prohibits registration of governmental insignia. The Director argues that § 2(b) contains no exception for a

government entity—in contrast to neighboring subsections which do contain exceptions—and § 2(b) focuses on the nature of the mark rather than the identity of the applicant. Therefore, according to the Director, Houston's identity as a government entity is irrelevant to the prohibition of § 2(b). For these reasons, the Director requests that we affirm the Board.

We begin our analysis with the language of the statute. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."). There is a "strong presumption that the plain language of the statute expresses congressional intent [which] is rebutted only in rare and exceptional circumstances." *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 11 (2008) (internal citations omitted).

The prohibition of § 2(b) is clear. Section 2(b) prohibits registration of an "insignia of the United States, or of any State or municipality." We see nothing in this plain language that suggests a government entity such as Houston should be exempted from the reach of the prohibition.

The definitions provided in § 45 only solidify our conclusion. Section 45 plainly contemplates a government entity being an "applicant." Indeed, § 45 recites various government entities, including "the United States," "any State," and "any instrumentality of a State." *Id*. A governmental entity such as Houston is clearly an "organization capable of suing and being sued in a court of law" within the meaning of the statute, and therefore Houston is an "applicant" to which the prohibition of § 2(b) applies.

The context of § 2(b) also supports the plain language. While Houston points to concerns about "pirates and cheats," various provisions of the Lanham Act do not align

with this as an exclusive or even a primary policy objective. *See* § 2(e) (prohibiting a mark which "(2) when used on or in connection with the goods of the applicant is primarily geographically descriptive of them . . . (4) is primarily merely a surname," or "(5) comprises any matter that, as a whole, is functional."). Therefore, we find it difficult to conclude that the provisions in § 2 of the Lanham Act, including § 2(b), were all intended to protect the public from "pirates and cheats."

Furthermore, we are reluctant to add a silent exception to § 2(b) because the neighboring sections of § 2(b) demonstrate that the drafters of the Lanham Act knew how to express exceptions to a section's prohibitions when such exceptions were warranted. *See*, *e.g.*, § 2(c) ("Consists of or comprises a name, portrait, or signature identifying a particular living individual *except by his written consent*, or the name, signature, or portrait of a deceased President of the United States during the life of his widow, if any, *except by the written consent of the widow*.") (emphasis added).

Therefore, we conclude that the context of § 2(b) supports the plain language of the prohibition and Houston's identity as a governmental entity does not free it from the reach of § 2(b). As the nature of the mark is not disputed in this appeal—Houston admits that its city seal is an insignia under § 2(b) of the Lanham Act—the Board properly affirmed the examining attorney's refusal to register Houston's city seal.

We note that Houston has other means to prevent "pirates and cheats" from using its city seal to deceive the public. Presumably the city of Houston could pass an ordinance prohibiting such activity. Other legal protections under the Lanham Act may exist as well. *See* 15 U.S.C. § 1125. But if Houston feels that the legal protections available to it under the Lanham Act are insufficient, and Houston desires a rewriting of § 2(b) to

permit it to register its city seal, Houston must take the matter up with Congress; this court is not the proper forum for rewriting of Congressional acts.

### B.  The District of Columbia Appeal

The District takes a quite different approach in its argument that § 2(b) does not, cannot, prohibit the District from registering its official seal.  Though its arguments are interwoven in ways that make them somewhat difficult to separate for analysis, there seems to be two identifiable issues, both keyed to the existence of the treaty obligations of the United States prescribed by the Paris Convention, specifically Article 6. *See* Int'l Convention for the Protection of Industrial Property, as modified at The Hague on November 6, 1925, 47 Stat. 1789, 1804–05, T.S. 834 and London on June 2, 1934, 53 Stat. 1748, 1776–78, T.S. 941 (hereafter the "Paris Convention").  Before the Board, the District raised a variety of interpretation issues, but in its appeal here, and in its repetitious statement of the issues in its opening brief, the District focused its case on the international obligations issue.

### 1.

The District argues that Congress intended for the Lanham Act to implement the treaty rights established in the Paris Convention, and that this intention is made clear by reviewing the Lanham Act's legislative history. Thus, according to the District, we must construe § 2(b) to be consistent with the language of the Paris Convention to give effect to Congressional intent.

To support its legislative history argument, the District, in its briefs to this court, devotes many pages to the history of the Paris Convention, beginning with its first iteration in 1883, and running through amendatory sessions in Washington (1911), The Hague (1925), London (1934), and Stockholm (1967) (despite which it is still known as the "Paris Convention").  This history then is

woven together with the history of the Trademark Act, beginning with its first enactment in 1905 through its revision in the Lanham Act of 1946 and subsequent amendment. When read together in this fashion, it is the District's view that the Lanham Act be seen as intended to implement the requirements of the Paris Convention, and the Paris Convention be seen as requiring that the official insignia of the District be entitled to domestic registration.

The Director contends that we do not need to consider the legislative history of the Lanham Act because the meaning of § 2(b) is plain on its face, and thus is not subject to any interpretation that would vary from that plain meaning. The District responds that the meaning of the language of § 2(b) is not all that clear, and in fact is ambiguous on this point as evidenced among other things by the fact that other examining attorneys in prior cases have allowed registrations of seals by local governments.[1]

Thus, for purposes of their respective positions the parties vigorously dispute whether § 2(b) is to be considered clear on its face or is somehow ambiguous. That determination appears relevant, in the parties' view, to whether the legislative history of the Lanham Act and the Paris Convention is a proper subject for judicial consideration.

In so far as the question of "legislative history" is concerned, there may be some misapprehension about what that term encompasses. It is always permissible in interpreting a statute to explore the statutory context of an

---

[1]    The parties have a long-running dispute over the evidence of this proposition, but the Board eventually admitted three examples; the parties continue to dispute the significance of those examples.

enactment and its amendments over time, as well as other contemporary statutory provisions that are relevant to the context of the provision under review. Those are parts of the statutory setting that help in understanding the meaning of particular statutory phrases. *See, e.g.*, *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme. A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole.") (citations omitted) (internal quotation marks omitted); *Barela v. Shinseki*, 584 F.3d 1379, 1383 (Fed. Cir. 2009) (stating that "courts must consider not only the bare meaning of each word but also the placement and purpose of the language within the statutory scheme").

What is less accepted is what is usually understood as "legislative history," such as the individual statements on the floor of the legislature by key legislators in favor of or opposed to the legislation, or language in committee reports that purports to explain legislative intent. Many opinions, including those of the Supreme Court, contain statements to the effect that such "legislative history," if it ever is admissible, is only admissible when a statute is deemed "ambiguous"; absent that, the "plain meaning" of a statute may not be varied by these or other non-statutory factors. *See Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 395–96 (1951) (Jackson, J., concurring) (stating that "[r]esort to legislative history is only justified where the face of the Act is inescapably ambiguous," and "to select casual statements from floor debates, not always distinguished for candor or accuracy, as a basis for making up our minds what law Congress intended to enact is to substitute ourselves for the Congress in one of its important functions"); *United States v.*

*United Mine Workers of Am.*, 330 U.S. 258, 319 (1947) (Frankfurter, J., concurring) ("It is one thing to draw on all relevant aids for shedding light on the dark places of a statute. To allow inexplicit remarks in the give-and-take of debate to contradict the very terms of legislation and the history behind it is to put out the controlling light on meaning shed by the explicit provisions of an Act in its setting.").

Returning to the parties' disagreement about the threshold issue of whether the statute is ambiguous, we agree with the Director: the statutory prohibition of § 2(b) is quite plain on its face. While our conclusion does not preclude an examination of legislative context—the statutory setting—of the Paris Convention and the Lanham Act, it would not be proper for us to consider the proffered legislative history that includes so much else.

Our examination of the applicable provisions of the Paris Convention and its context—as we explain in more detail below—leads us to conclude that there is inadequate support for the District's theory. Put another way, even assuming that the Lanham Act was intended to implement the obligations of the Paris Convention, under the Paris Convention the District has no rights relating to its official insignia; we find nothing in the text or context of the Lanham Act or the Paris Convention, including the prior versions of each, that suggests otherwise.

2.

Turning then to the Paris Convention itself, the District cites to *Murray v. Schooner Charming Betsy*, 6 U.S. 64 (1804), and contends that the PTO's construction of §2(b) and denial of the District's registration is a violation of the rule set forth in *Charming Betsy*. The understood rule of *Charming Betsy* is that "an act of congress ought never to be construed to violate the law of nations, if any other possible construction remains." *Id*. at 118. We are urged to resolve this case on the basis of that rule of

construction so as to avoid sanctioning any violation of U.S. treaty obligations or waiver of U.S. treaty rights.

According to the District, when Articles 6*ter* and 6*quinquies*[2] of the Paris Convention as now written are read together, they require member countries to register as trademarks official insignia that are authorized by competent authorities in other member countries.

The District contends that the Board's interpretation of § 2(b) violates this U.S. treaty obligation because it prohibits everyone, including a municipality in a foreign member country, from registering its insignia in the United States. According to the District, the Board's interpretation of § 2(b) must be reversed as it violates the *Charming Betsy* principle by construing a domestic law to violate the law of nations. The Director reads the text of the Paris Convention rather differently, and concludes among other things that Article 6 does not apply to municipal-level insignia.

To determine whether the Board's construction of § 2(b) violates U.S. treaty obligations, we first turn to the text of the treaty. As it currently stands, Article 6*quinquies* states:

> Every trademark duly registered in the country of origin shall be accepted for filing and protected as is in the other countries of the Union, subject to the reservations indicated in this Article. . . .

Paris Convention, art. 6*quinquies* as modified at Stockholm, July 14, 1967, 21 U.S.T. 1583; 828 U.N.T.S. 303.

---

[2] "-ter" is a Latin suffix meaning in this context "third subsection"; "-quinquies" similarly means in this context "fifth subsection."

Article 6*ter* includes a relevant modification to the general rule in Article 6*quinquies*:

> The countries of the Union agree to refuse or to invalidate the registration, and to prohibit by appropriate measures the use, without authorization by the competent authorities, either as trademarks or as elements of trademarks, of armorial bearings, flags, and other State emblems, of the countries of the Union, official signs and hallmarks indicating control and warranty adopted by them, and any imitation from a heraldic point of view.

*Id.* art. 6*ter*.

Article 6*ter,* and to the extent Article 6*quinquies* applies at all, see below, address "armorial bearings, flags, and other State emblems, *of countries of the Union.*" *Id.* (emphasis added). We understand the reference in Article 6 to "the Union" is not a reference to the Union over which our nation fought the civil war, but rather a Union of the countries that have joined in the treaty. Therefore, whatever obligations the United States has under Article 6*ter* and Article 6*quinquies* relate to emblems of countries, not emblems of local public bodies such as municipalities.

Turning to the facts of this case, the District is a municipality of the United States, not a "country of the Union." District of Columbia Organic Act of 1871, 16 Stat. 419 (1871) (stating that the District of Columbia is "constituted a body corporate for municipal purposes, and may … have a seal, and exercise all the powers of a municipal corporation"). Section 2(b) prohibits registration of an "insignia of the United States, or of any State or municipality." The District does not dispute that its official seal is an "insignia." Because the District is not a country of the Union, the District's seal is not an official insignia or "emblem" of a country of the Union.

Furthermore, Article 6*quinquies* by its own terms applies only to trademarks that are "duly registered in the country of origin." Since the question before us is whether the applied-for mark can be registered in the United States, the country of origin, invoking 6*quinquies* for the answer is circular reasoning.

Therefore, the prohibition of § 2(b) as applied to the District's seal does not affect the treaty obligations of the United States under the Paris Convention, and the *Charming Betsy* principle does not apply given the facts of this case.[3] As far as the obligations of the United States under the Paris Convention are concerned, the Board was correct to uphold the examining attorney's refusal to register the District's official seal.

The District further argues that the Board's interpretation would have the effect of preventing a foreign municipality from obtaining a registered mark in the United States, and such effect would be a clear violation of the Paris Convention. That argument does not hold water on

---

[3]    For the record, we note that prior to the argument in this case the Director wrote a letter to the court withdrawing from consideration two of the arguments in the Director's brief as to why the principle of the *Charming Betsy* is not applicable: that the treaty is not self-executing, and that the principle is inapplicable to cases involving solely domestic entities and domestic acts. *See* Letter from Christina J. Hieber, Associate Solicitor of the U.S. Patent and Trademark Office, to Jan Horbaly, Clerk of Court of the U.S. Court of Appeals for the Federal Circuit (May 3, 2013). Since our decision does not hinge on either of those propositions regarding the *Charming Betsy* principle, but rather is based on our interpretation of the Paris Convention itself, we need not comment further.

either side of the continent. First, the Board's conclusion, as is ours, was limited to the domestic entity, the District. JA041-42 ("We conclude that registration of the mark depicted in the subject application is barred by Trademark Act § 2(b)."). Second, we decline to decide the District's case based upon the rights of hypothetical third parties; we decide the case that is before us.

Houston and the District make additional subsidiary arguments to support their assertions that the Board improperly construed § 2(b), some of which have been mentioned. We have considered each of these arguments and find that they do not persuade us to a conclusion contrary to the one we have reached.

CONCLUSION

We conclude that the Board's final decisions should be, and are, affirmed.

**AFFIRMED**