THIS OPINION IS A
PRECEDENT OF THE
TTAB

Mailed: March 14, 2017

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Family Emergency Room LLC*

_____

Serial No. 86709923

_____

Joshua G. Jones of Reed and Scardino
    for Family Emergency Room LLC.

Heather D. Thompson, Trademark Examining Attorney, Law Office 109,
    Michael Kazazian, Managing Attorney.

_____

Before Quinn, Wellington, and Coggins,
    Administrative Trademark Judges.

Opinion by Quinn, Administrative Trademark Judge:

Family Emergency Room LLC ("Applicant") filed an application to register on the

Principal Register the mark shown below



(CEDAR PARK FAMILY EMERGENCY ROOM disclaimed) for "hospitals" in

International Class 44.[1]

---

[1] Application Serial No. 86709923, filed July 30, 2015 under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), based on an allegation of a bona fide intention to use the mark in

The Trademark Examining Attorney refused registration under Section 2(b) of the Trademark Act, 15 U.S.C. § 1052(b), on the ground that the proposed mark includes a simulation of the flag of Switzerland.

When the refusal was made final, Applicant appealed and requested reconsideration. The request for reconsideration was denied, proceedings in the appeal were resumed, and Applicant and the Examining Attorney filed briefs.

Section 2(b) provides that:

> No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—
> * * * *
> (b) Consists of or comprises[2] the flag or coat of arms or other insignia of the United States, or of any State or municipality, or of any foreign nation, or any simulation thereof.

Applicant argues that its proposed mark contains "a rhombus or diamond shape with a series of lines in front of the rhombus," and that the mark "while certainly borrowing elements of the Swiss national flag, does not run afoul of Section 2(b)." 7 TTABVUE 3. Applicant relies upon two non-precedential Board decisions, and two abandoned applications in support of its position that the mark is registrable.

---

commerce. The application includes the following statements: "The mark consists of a white cross on a red field, red diagonal lines on the left edge of the field, the words 'Cedar Park' over the words 'family emergency room' wherein the letters 'ER' in 'emergency' are larger and in bold font. The colors white, red and gray are claimed as a feature of the mark."

[2] As the Federal Circuit explained when construing the identical "consists of or comprises" language in Section 2(a), "the word 'comprises,' at the time of the statute's enactment in 1905, meant 'includes.'" *In re Fox*, 702 F.3d 633, 105 USPQ2d 1247, 1250 (Fed. Cir. 2012), citing *Webster's Academic Dictionary* 121 (Springfield, Mass., G. & C. Merriam Co. 1895). Section 2(b) thus prohibits registration of a mark that *includes* a flag of a foreign nation or any simulation thereof.

The Examining Attorney maintains that the mark includes a design of a white cross on a red ground, and that this is the flag or a simulation of the flag of the Swiss Confederation, that is, Switzerland. Contrary to Applicant's contention that this portion of the mark is a rhombus design, the Examining Attorney states that "the tilted angle of the applicant's figure gives the appearance of a flag on display [that] serves to emphasize the resemblance to the Swiss flag." 9 TTABVUE 5. The Examining Attorney also distinguishes the present case from the two non-precedential Board decisions, and two third-party applications (now abandoned), all relied upon by Applicant in connection with its argument that the Office has approved similar marks in the past. In support of the refusal, the Examining Attorney introduced a representation of the Swiss flag.

Registration must be refused under Section 2(b), in pertinent part, if the proposed mark includes a true representation of the flag of a foreign nation, or is a simulation thereof.[3] The word "simulation" in the statute "is used … in its usual and generally understood meaning, namely to refer to something that gives the appearance or effect or has the characteristics of an original item." *In re Advance Indus. Sec., Inc.*, 194 USPQ 344, 346 (TTAB 1977). *See In re Waltham Watch Co.*, 179 USPQ 59, 60 (TTAB

---

[3] In the view of Professor McCarthy: "Section 2(b)'s absolute bar is apparently founded upon the thinking that these kinds of governmental insignia, such as a national flag or seal, should not be registered as symbols of origin for commercial goods and services. That is, these kinds of governmental insignia ought to be kept solely to signify the government and not be sullied or debased by use as symbols of business and trade." 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 19:79 (4th ed. Dec. 2016). In this connection, registration of all such official insignia is barred regardless of the identity of the applicant, that is, the statutory prohibition allows no exception even when the applicant is a government entity seeking to register its own flag, coat of arms, or other insignia. *In re City of Houston*, 731 F.3d 1326, 108 USPQ2d 1226 (Fed. Cir. 2013).

1973). Whether particular matter is a simulation of a flag is determined by a visual comparison of the matter and the actual flag. *Id.*

Under standard examination procedure, a refusal is issued if the design would be perceived by the public as a flag, regardless of whether other matter appears with or on the flag. Trademark Manual of Examining Procedure (TMEP) § 1204.01(a) (Jan. 2017). Thus, the relevant question is whether consumers will perceive matter in the mark as a flag. TMEP §1205.01(d)(ii). Marks containing elements of flags in a stylized or incomplete form are not refused under Section 2(b). *See In re Waltham Watch Co.*, 179 USPQ at 60; TMEP § 1204.01(b). The focus of the analysis is on the relevant purchasers' general recollection of the flag, "without a careful analysis and side-by-side comparison." *In re Advance Indus. Sec., Inc.*, 194 USPQ at 346. In this case, the relevant consumer is the recipient of hospital services, which is, of course, the general public.

The TMEP provides applicants and examining attorneys with a reference work on the practices and procedures relative to prosecution of applications to register marks in the USPTO. TMEP § 1205.01(d) is devoted entirely to marks containing the Swiss Confederation flag or coat of arms. The present application involves a flag design, so we focus our attention on the Swiss flag design (as opposed to the Swiss coat of arms). As indicated in TMEP § 1205.01(d): "[T]he Swiss flag consists of a white equilateral cross displayed upright on a red square." Examining attorneys have been appropriately instructed to consider the following factors when determining whether matter in a mark will be perceived as the Swiss flag:

- the colors, if any, that appear in the matter;

- the stylization of the matter and its relationship to other elements in the mark;

- the presence of any words or other designs on the drawing that might create or reinforce the impression that the matter is the Swiss flag; and

- the presentation and use of the mark on the specimen of record, if one is provided.

TMEP § 1205.01(d)(ii). The determination of whether a refusal under Section 2(b) must issue should be based on how the mark is displayed in the drawing, described in the application, or used in the specimen of record. *Id.* Examining attorneys must refuse registration under Section 2(b) if the mark contains an element composed of an upright equilateral cross on a square or a rectangle (or simulation thereof) that is not significantly stylized, altered, or merged with other elements in the mark, and, in relevant part, the drawing shows the cross in white and the square or rectangle in red. TMEP § 1205.01(d)(ii)(A). On the other hand, even if the mark contains an upright equilateral cross on a square or a rectangle (or simulation thereof), a Section 2(b) refusal should not be issued if, in relevant part, the flag shown in the mark is sufficiently altered, stylized, or merged with other elements in the mark, so as to create a distinct commercial impression. TMEP §§ 1204.01(b); 1205.01(d)(ii)(C). The above standards, as set forth in the TMEP, are appropriate under the statute.

The flag of Switzerland is shown below (www.cia.gov; August 21, 2015 Office Action, p. 2):

5



The design in the proposed mark, which the Examining Attorney views as a simulation of the Swiss flag, is shown below:



In the required description of the mark (*see* Trademark Rules 2.37 and 2.52(b)(5)), Applicant describes this portion of its proposed mark as "a white cross on a red field, [with] red diagonal lines on the left edge of the field." In the required color description of the mark (*see* Trademark Rule 2.52(b)(1)), Applicant states, *inter alia*, that the colors white and red are claimed as a feature of the mark.

When the design in the proposed mark, featuring a white cross on a red ground, is compared to the red and white Swiss flag, we find that they are highly similar, and that the addition of the lines at the left of the design, and the very slight tilt of the design, are insignificant in altering the commercial impression of the design. Although the red field technically is not a square (but, rather, as Applicant states, a

rhombus[4]), it would likely be perceived as a square viewed from a slight angle. Given the close approximation of the Swiss flag in Applicant's design, it is not unreasonable to assume that many consumers might not even notice the slight tilt and lack of right angles of the red ground. Similarly, the addition of the stylized wording CEDAR PARK FAMILY EMERGENCY ROOM to the right of the white cross and red ground design does not change the perception of that design from a simulation of the Swiss flag. Simply put, the design shown in the proposed mark is not sufficiently altered, stylized, or merged with the other elements in the mark, so as to create a distinct commercial impression, other than as a simulation of the Swiss flag. The average member of the general public seeing the proposed mark would associate the design feature with the flag of Switzerland. Accordingly, the matter sought to be registered, when considered in its entirety, is prohibited under Section 2(b) because the proposed mark includes a design consisting of or comprising a simulation of the flag of Switzerland.

The two third-party applications (shown below), now abandoned, relied upon by Applicant are entirely unpersuasive.[5]

---

[4] A rhombus with right angles is a square. (www.merriam-webster.com). The Board may take judicial notice of dictionary definitions, *Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imp. Co.*, 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983), including online dictionaries that exist in printed format or have regular fixed editions. *In re Red Bull GmbH*, 78 USPQ2d 1375, 1377 (TTAB 2006). *See In re Thomas White Int'l Ltd.*, 106 USPQ2d 1158, 1160 n.1 (TTAB 2013).

[5] Application Serial Nos. 85250677 and 78916348, respectively. Even if these applications had not been abandoned, for the reasons expressed below, we would reach the same result in this appeal.

 

First, such applications are evidence only of the fact that they were filed; they have no other probative value. *In re Pedersen*, 109 USPQ2d 1185, 1196 n.45 (TTAB 2013), citing *In re Juleigh Jeans Sportswear, Inc.*, 24 USPQ2d 1694 (TTAB 1992). Second, these two examples appear in TMEP § 1205.01(d)(v), with analysis that clearly distinguishes each of the proposed marks from the one sought to be registered in the present application. As indicated in the TMEP, a Section 2(b) refusal is not appropriate in the first mark because the relevant matter does not appear in the shape of the Swiss flag, which is not the situation with the present applied-for mark. With respect to the second mark, although the mark contains an upright equilateral cross in white on a red background, this matter is integrated into a stylized silhouette of a house and, accordingly, the mark creates a commercial impression of something entirely different from the Swiss flag. This second situation is very different from the design in the present mark.

We have considered Applicant's remaining arguments, including its arguments based on two unpublished Board decisions,[6] and do not find them persuasive.

*Decision:* The refusal to register is affirmed.

---

[6] Application Serial Nos. 77046679 (dated November 14, 2008) and 85641327 (dated September 30, 2014).