This Opinion is a
Precedent of the TTAB

Hearing: January 11, 2017                                Mailed: March 31, 2017

UNITED STATES PATENT AND TRADEMARK OFFICE

\_\_\_\_

Trademark Trial and Appeal Board

\_\_\_\_

*In re Shabby Chic Brands, LLC*

\_\_\_\_

Serial No. 85135970

\_\_\_\_

Jill M. Pietrini of Sheppard Mullin Richter & Hampton LLP,
  for Shabby Chic Brands, LLC.

Stephanie M. Ali, Trademark Examining Attorney, Law Office 109,
  Michael Kazazian, Managing Attorney.

\_\_\_\_

Before Zervas, Shaw, and Kuczma
  Administrative Trademark Judges.

Opinion by Shaw, Administrative Trademark Judge:

Shabby Chic Brands, LLC ("Applicant") seeks registration on the Principal

Register of the following mark,



for a variety of furniture and decorative housewares, in International Class 20; household and kitchen utensils, in International Class 21; and textile goods, in International Class 24.[1] The description of the mark reads: "The mark consists of a design of an ornate, feathered crown." The initials "SC" appear on the front of the crown, and color is not claimed as a feature of the mark. Applicant claims ownership of two prior registrations, Registration Nos. 2898987 and 2967641, now expired, for the following related marks for similar goods:

 [2]  [3]

The Trademark Examining Attorney refused registration of Applicant's mark under Section 2(b) of the Trademark Act, 15 U.S.C. § 1052(b), on the grounds that the proposed mark includes a simulation or design that resembles a governmental insignia of the United Kingdom, namely, the official emblem of the Prince of Wales,

---

[1] Application Serial No. 85135970 was filed on September 22, 2010, based upon Applicant's allegation of a *bona fide* intention to use the mark in commerce under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b).

[2] Registration No. 2967641, issued November 2, 2004, cancelled on June 5, 2015, for failure to renew.

[3] Registration No. 2967641, issued July 12, 2005, cancelled on February 19, 2016, for failure to renew.

as depicted in the designation filed by the Government of the United Kingdom in accordance with the Paris Convention, shown below:



4

The case is fully briefed and the Board conducted a hearing on January 11, 2017. We affirm the refusal to register.

Analysis

Section 2(b) of the Trademark Act provides, in relevant part, that,

> No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—
>
> * * *
>
> (b) Consists of or comprises the flag or coat of arms or other insignia of the United States, or of any State or municipality, or of any foreign nation, or any simulation thereof.

15 U.S.C. § 1052(b).

The issue before us involves two questions. First, is the Prince of Wales' emblem an insignia of a foreign nation? Second, if so, does Applicant's mark consist of or comprise the insignia, or a simulation thereof? We address each question in turn.

---

4 Image from Serial No. 89001177, filed September 12, 2005. Discussed in more detail *infra*.

### A. Whether the Prince of Wales' emblem is an insignia of a foreign nation

We begin with an examination of whether the Prince of Wales' emblem falls within the protections of Section 2(b) of the Trademark Act. Applicant, for the first time at oral hearing, argues that the Prince of Wales' emblem is not a coat of arms or other insignia of a foreign nation and therefore, a Section 2(b) refusal is inappropriate. We disagree.

The Prince of Wales is a member of the British royal family and is heir to the throne of the United Kingdom.[5] According to the "Titles and Heraldry" page of the Prince of Wales' official website, the emblem at issue here has a long association with the Prince of Wales and is described as comparable to a coat of arms:

> The Prince is strongly identified with his badge The Prince of Wales's Feathers, the use of which dates back to the 14th Century and the time of Edward, The Black Prince, who was the first Prince of Wales.
>
> * * *
>
> In addition to the feathers, The Prince has a coat of arms with long historical links with the heraldry of his ancestors. [6]

Moreover, the Government of the United Kingdom identified the emblem as "[t]he official emblem of the Prince of Wales" when it notified the World Intellectual Property Organization (WIPO) in 2005, under the framework of the Paris convention, that the Prince of Wales emblem is a 'state emblem' of the United Kingdom.[7] WIPO

---

[5]  Http://www.princeofwales.gov.uk/the-prince-of-wales/titles-and-heraldry, Office Action of February 13, 2015, TSDR p. 2.

[6] *Id.*

[7] Serial No. 89001177, Office Action of June 18, 2014, TSDR pp. 2-3.

transmitted the notification to the United States and the other Paris Union Members under the framework provided for in Article 6*ter* of the Paris Convention for the Protection of Industrial Property[8] for the protection of "armorial bearings, flags, and other State emblems, of the countries of the Union, official signs and hallmarks indicating control and warranty."[9]

Since the Paris Convention is not-self executing in the United States, domestic legislation is required to implement the treaty. *In re Rath,* 402 F.3d 1207, 74 USPQ2d 1174, 1176 (Fed. Cir. 2005). The United States has implemented its obligations under Article 6*ter*, in part, through Section 2(b). *See generally In re District of Columbia*, 101 USPQ2d 1588 (TTAB 2012), *aff'd sub nom. In re City of Houston,* 731 F.3d 1326, 108 USPQ2d 1226 (Fed. Cir. 2013); *see also* Trademark Manual of Examining Procedure (TMEP) § 1205.02 (Jan. 2017). The notification process that the Government of the United Kingdom used to communicate its emblem is designed to assist Paris Union Members in identifying which emblems the notifying member wishes to be considered for protection under the Convention. Once the United States received the emblem notification, the USPTO assigned it a serial number specifically identifying the entry as "non-registration data" and entered it into the USPTO search database.[10] This non-registration data is included in the USPTO's search records to assist Examining Attorneys when considering possible statutory refusals; the

---

[8] International Convention for the Protection of Industrial Property, Mar. 20, 1883, as revised at Stockholm on July 14, 1967 ("Paris Convention") available at http://www.wipo.int/treaties/en/ip/paris/trtdocs_wo020.html.

[9] Article 6*ter* of the Paris Convention.

[10] Serial No. 89001177, Office Action of June 18, 2014, TSDR pp. 2-3.

information about the designation should be discovered in a search of the records. *See* TMEP § 1205.02.

To be clear, Serial No. 89001177 in the USPTO's search database is the designation of the emblem from the Government of the United Kingdom under Article 6*ter*, but is not considered a U.S. registration. This designation provides notice to those searching the USPTO database that the Government of the United Kingdom identifies the emblem of the Prince of Wales as a State emblem. As a result, such a designation may form the basis of a refusal to register in the United States under Sections 2(a) or 2(b) of the Trademark Act, depending upon the nature and use of the mark, but it would not form the basis of a refusal under Section 2(d).

The wording "other insignia" found in Section 2(b) has not been interpreted broadly, but is considered to include only those emblems and devices that also represent such authority as, and that are of the same general class and character as, flags and coats of arms of the United States, of states or municipalities, or of foreign nations. *See In re U.S. Dept. of the Interior*, 142 USPQ 506, 507 (TTAB 1964) ("Since both the flag and coat of arms are emblems of national authority it seems evident that other insignia of national authority such as the Great Seal of the United States, the Presidential Seal, and seals of government departments would be equally prohibited registration under Section 2(b).").

Based on its long association with the heir apparent to the British throne, dating back to the fourteenth century, and its designation by the Government of the United Kingdom as the official emblem of the Prince of Wales, we find that the Prince of

Wales' emblem is an "insignia of national authority" on par with a coat of arms as found in Section 2(b). *Id.* Accordingly, we find that the Prince of Wales' emblem as depicted in Serial No. 89001177 is an insignia of a foreign nation.

> B. *Whether Applicant's mark consists of, comprises, or is a simulation of the Prince of Wales' emblem*

Because there are differences between Applicant's mark and the Prince of Wales' emblem, we find Applicant's mark does not "consist[ ] of or comprise[ ]" the emblem. Instead, we consider whether Applicant's mark is a "simulation" of the emblem. Regarding the meaning of the term "simulation," as used in Section 2(b), the Board has stated:

> In determining this issue, it is our opinion that the term "simulation" is used in the context of Section 2(b) of the Statute in its usual and generally understood meaning, namely to refer to something that gives the appearance or effect or has the characteristics of an original item. (Webster's Third New International Dictionary, Unabridged Edition, 1965). Whether or not a simulation exists in a proceeding of this character must necessarily be one of first impression gathered from a view of such mark without a careful analysis and side-by-side comparison with [the emblem].
>
> Focus must be on general recollection of the [emblem] by purchasers, and a comparison of it with applicant's mark.

*In re Advance Indus. Sec., Inc.,* 194 USPQ 344, 346 (TTAB 1977). Conversely, the incorporation in a mark of individual or distorted features that are merely suggestive of flags, coats of arms or other insignia does not bar registration under Section 2(b). *See In re Waltham Watch Co.,* 179 USPQ 59, 60 (TTAB 1973) ("[A]lthough the flags depicted in applicant's mark incorporate common elements of flag designs such as

horizontal or vertical lines, crosses or stars, they are readily distinguishable from any of the flags of the nations alluded to by the examiner.").

The Prince of Wales' emblem is described in greater detail on the Prince's website as comprising "three silver (or white) feathers rising through a gold coronet[11] of alternate crosses and fleur-de-lys [sic]. The motto 'Ich Dien' (I serve) is on a dark blue ribbon beneath the coronet."[12] Notably, some variation in the representation of the emblem appears to be permitted:

> The rules of heraldry allow limited variations in the depiction of the badge. The spines or quills of the feathers can be of gold, instead of white or silver, and the coronet - usually studded with emeralds and rubies, can also feature small sapphires.
>
> The arrangement of the motto ribbon can vary, but is usually shown in front of the two outer feathers and behind the centre one.[13]

When we compare Applicant's mark with the emblem as shown above, we note several differences. The most obvious difference is that the banner and wording "Ich Dien" are absent from Applicant's mark which, in contrast, has the initials SC on the front of the crown. In addition, the quill ends of the feathers are not visible below the crown in Applicant's mark as they are in the Prince of Wales' emblem; the crowns are of slightly different designs; and the feathers too are arranged slightly differently. Nevertheless, when we compare overall commercial impression, we find that the

---

[11] A coronet is "a small or lesser crown usually signifying a rank below that of a sovereign." Https://www.merriam-webster.com/dictionary/coronet.

[12] Http://www.royal.gov.uk/ThecurrentRoyalFamily/ThePrinceofWales/Emblems.aspx, Office Action of February 13, 2015, TSDR p. 4.

[13] *Id.*

similarities outweigh these differences. Applicant's mark features two of the most dominant elements of the Prince of Wales' emblem: the crown and three feathers design. Applicant's mark is more than a combination of "common elements" that might be found in heraldry. *See Waltham Watch Co.*, 179 USPQ at 60 (Incorporation of common elements of flag designs insufficient to depict simulation of flags of Switzerland and Great Britain). That is, both Applicant's mark and the Prince of Wales' emblem create the same overall impression, that of a heraldic crown with three large feathers extending up from the crown. In addition, given the fact that some variation in the representation of the Prince of Wales' emblem is permitted, it is possible that consumers viewing Applicant's mark would ascribe any differences between Applicant's mark and the emblem to such permitted variation. Accordingly, we find that Applicant's mark is a "simulation" of an insignia of a foreign nation because it "gives the appearance or effect or has the characteristics of the original item," namely, the Prince of Wales' emblem. *See Advance Indus. Sec.,* 194 USPQ at 346.

Applicant, relying on *Advance Industrial Security*, nevertheless argues that consumers are unlikely to believe that Applicant's mark has any association or connection with the Prince of Wales:

> [C]onsumers will understand that Applicant's SC & Crown Design mark is a design associated with Applicant's famous SHABBY CHIC mark. . . . Applicant's crown and feather design resembles a house brand, rather than the Prince of Wales Emblem or any other official governmental insignia. The overall commercial impression conveyed by Applicant's mark is *not* that of a trademark owner trying to convince a viewer of a false association with a

government, a governmental entity, or other official designation.[14]

*Advance Industrial Security* does not compel a different outcome. In that case, the Board found the mark ADVANCE SECURITY with an eagle design, below left, was not a simulation of the Coat of Arms of the United States, below right, so as to bar registration under Section 2(b).




In comparing these marks, the Board found that the overall commercial impression of the applied-for mark differed from the Coat of Arms:

> [T]he mark proposed for registration is not merely an eagle and shield design with its distinct differentiations from the Coat of Arms, but it is in fact a triangular shield design in gold and brown with the words "ADVANCE SECURITY" predominately displayed in the upper central portion of the mark which creates an overall commercial impression distinctly different from the Coat of Arms per se.

*Id.* at 346. Here, we find the differences between Applicant's mark and the Prince of Wales' emblem are minor, and the similarities outweigh those differences to convey a similar overall commercial impression.

---

[14] Applicant's Br., p. 8-9, 15 TTABVUE 11-12.

Moreover, the record establishes that the Prince of Wales has the right to control the use of the emblem: "The Prince is also one of three members of the Royal Family able to grant Royal Warrants of appointment to companies. The company is then entitled to display The Prince of Wales's Feathers on their products."[15] It is possible that consumers, upon viewing Applicant's mark on the identified goods, may believe that Applicant has been granted such a Royal Warrant signifying that its products are associated with or approved by the Prince of Wales.

Applicant argues that its ownership of two cancelled registrations, for a nearly identical mark and a mark incorporating Applicant's crown design, establishes that it is "illogical to deny registration of Applicant's SC & Design mark given the Office's prior approval of the same or substantially indistinguishable design in Applicant's prior registrations."[16] This argument is unpersuasive. The existence of prior registrations does not overcome evidence that a mark is now unregistrable. It is well settled that we must assess each application on its own record at the time registration is sought, and that we are not bound by the decisions of Examining Attorneys in other cases. *In re Cordua Rests., Inc.*, 823 F.3d 594, 600, 118 USPQ2d 1632, 1635 (Fed. Cir. 2016) ("The PTO is required to examine all trademark applications for compliance with each and every eligibility requirement . . . even if the PTO earlier mistakenly registered a similar or identical mark suffering the same defect."); *see also In re Nett Designs Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001) ("[D]ecisions

---

[15] Http://www.princeofwales.gov.uk/the-prince-of-wales/titles-and-heraldry, Office Action of February 13, 2015, TSDR p. 2.

[16] Applicant's Br., p. 11, 15 TTABVUE 14.

regarding other registrations do not bind either the agency or this court."); *In re Boulevard Entm't Inc.*, 334 F.3d 1336, 67 USPQ2d 1475, 1480 (Fed. Cir. 2003) ("The fact that, whether because of administrative error or otherwise, some marks have been registered even though they may be in violation of the governing statutory standard does not mean that the agency must forgo applying that standard in all other cases.").[17]

In arguing that it is illogical to refuse registration in light of Applicant's prior registration of similar marks, Applicant also points to the Trademark Examining Operation's Consistency Initiative. The Consistency Initiative is a program developed to aid in the consistent examination of trademark applications as compared to co-pending applications and recent registrations.[18] The program began as a pilot and was eventually made permanent.[19] Under the program,

> Applicants may submit a Request [for Consistency Review] when a substantive or procedural issue has been addressed in a significantly different manner in different cases, subject to the following provisions:
>
> (1) the Request is based on co-pending applications or an application and a registration owned by the same legal entity or a successor in interest (e.g., assignee);

---

[17] In addition, the record here reflects that the evidence available to the Examining Attorney to establish the refusal under Section 2(b) with respect to the Prince of Wales' emblem in this application is different from that which was available when the marks in the prior registrations were examined in 2003. In particular, a search of the USPTO's database then would not have returned the Prince of Wales' emblem claimed as a state emblem of the United Kingdom in Serial No. 89001177 because it was filed in 2005.

[18] Http://www.uspto.gov/web/trademarks/notices/Consistency_Notice_Final.doc, September 29, 2008.

[19] Https://www.uspto.gov/trademark/trademark-updates-and-announcements/consistency-initiative, December 4, 2012.

(2) the registration(s) involved was issued less than five years prior to the date of the Request;

(3) at least one of the applications in the Request is in a pre-publication status at the time of the Request; and

(4) the allegedly inconsistent treatment has already occurred.[20]

Applicant states that "[t]he present situation is exactly the type of situation the Consistency Initiative is intended to address, namely, Applicant's prior registrations for the <u>same</u> mark for the <u>same</u> goods dictate registration of the present application."[21]

Applicant's reliance on the Consistency Initiative is misplaced for a number of reasons. First, even if the Board were the proper forum in which to complain about treatment of the involved application under the Initiative, Applicant has not indicated that it actually submitted a Request for Consistency Review as required by the program. Second, Applicant's prior registrations are not encompassed by the program inasmuch as they have been cancelled and also were issued more than five years prior to the examination of Applicant's mark in the present application. Third, the Office specifically retains the right to determine what constitutes the proper examination of a given case, regardless of the nature of the request, and has explained: "Requesters should note, however, that subsequent action taken by the Office may differ from that requested. Alternatively, the Office may determine that

---

[20] *Id.*

[21] Applicant's Br., p. 12, 15 TTABVUE 15.

different handling of the cases is appropriate, and no action will be taken."[22] Thus, it is not clear that the Section 2(b) refusal would have been withdrawn had Applicant filed a Request. Lastly, the Consistency Initiative is a program developed to aid the examination by the Trademark Examining Group and decisions made under the Initiative are not binding on the Board. Although we recognize that "consistency is highly desirable," *In re Omega SA,* 494 F.3d 1362, 83 USPQ2d 1541, 1544 (Fed. Cir. 2007), consistency in examination is not itself a substantive rule of trademark law, and a desire for consistency cannot overcome the requirements of the statute. *See Cordua*, 118 USPQ2d at 1635. For these reasons, we find that the Consistency Initiative does not dictate registration of the present application.

Applicant further argues that it is entitled to registration because the USPTO has registered hundreds of "other 'royal' looking [crown] designs" and "more than one thousand marks incorporating the fleur-de-lis design."[23] We disagree. None of the numerous third-party marks Applicant made of record combine both a crown and feathers to the same degree of similarity with the Prince of Wales' emblem as does Applicant's mark. Applicant's argument that its mark has co-existed with the Prince of Wales' emblem for 13 years without confusion or objection from the Prince of Wales is equally unpersuasive.[24] Section 2(b) is an absolute bar to registration, thus, absence of confusion is irrelevant and a lack of objection from the Prince of Wales

---

[22] Https://www.uspto.gov/trademark/trademark-updates-and-announcements/consistency-initiative, December 4, 2012.

[23] Applicant's Br., p. 12, 15 TTABVUE 15.

[24] Applicant's Reply Br., p. 8, 18 TTABVUE 8.

plays no part. *See In re District of Columbia,* 101 USPQ2d at 1598 ("[R]ather than simply being a special case of confusion, registration of governmental insignia is prohibited by Trademark Act § 2(b) *regardless* of whether confusion would result.").

In sum, the record in this case convinces us that Applicant's mark is a simulation of an insignia of a foreign nation; the bar against its registration is absolute under the Trademark Act; and Applicant's invocation of the Trademark Examining Group's Consistency Initiative before the Board is procedurally improper.

***Decision***: The refusal to register Applicant's mark under Section 2(b) of the Trademark Act is affirmed.