THIS OPINION IS A
PRECEDENT OF THE TTAB

Hearing: February 24, 2022 Mailed: August 4, 2022

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re County of Orange*

_____

Serial Nos. 87419378, 87639750

_____

Anna M. Vradenburgh and John Tehranian of One LLP,
    for County of Orange.

Nancy L. Clarke, Trademark Examining Attorney, Law Office 102[1]
    Mitchell Front, Managing Attorney, and
Christina Calloway, Trademark Examining Attorney, Law Office 122[2]
    Kevin Mittler, Managing Attorney.

_____

Before Shaw, Coggins, and Allard,
    Administrative Trademark Judges.

Opinion by Allard, Administrative Trademark Judge:

County of Orange ("Applicant") seeks registration on the Principal Register of the

following mark (the "Circular Mark"):

---

[1] Trademark Examining Attorney Clarke managed the prosecution of and submitted the appeal brief for application Serial No. 87419378.

[2] Trademark Examining Attorney Calloway managed the prosecution of and submitted the appeal brief for application Serial No. 87639750. Examining Attorney Calloway appeared at the oral hearing and represented the United States Patent and Trademark Office ("USPTO") on both applications.



for a wide range of services in seven classes, including:

- county government services, namely, providing information in the field of government affairs, in International Class 35;

- maintaining parks, libraries, county offices, harbors and airports, namely, building maintenance, in International Class 37;

- running and maintaining public services, namely, providing transport and storage of waste, in International Class 39;

- county government services in the nature of education and entertainment services, such as, providing sport facilities and libraries, in International Class 41;

- environmental testing and inspection services, evaluation and testing of real estate for the presence of hazardous material, in International Class 42;

- providing public health care services, in International Class 44; and

- providing law enforcement services, namely, police and civil protection services, in International Class 45.[3]

Applicant also applied to register the mark shown below (the "Badge Mark"):

---

[3] Application Serial No. 87419378 (the "'378 application") was filed on April 20, 2017, under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), based upon Applicant's claim of first use anywhere since 1952 and in commerce since 1965 in all classes.

Applicant describes the mark in the application as follows: "The mark consists of a circle surrounding the words 'COUNTY OF ORANGE' on the top and 'CALIFORNIA' on the bottom with an image of a mountain, a field and three oranges set in the middle." Color is not claimed as a feature of the mark.

Applicant disclaims the exclusive right to use the wording "COUNTY OF ORANGE CALIFORNIA."



for services in International Classes 35 and 41, which are similar to those identified in Classes 35 and 41 in the application to register the Circular Mark.[4] Notably, the Badge Mark incorporates the Circular Mark in its entirety.

With regard to the application to register the Circular Mark, the Trademark Examining Attorney refused registration of it under Trademark Act Section 2(b), 15 U.S.C. § 1052(b), because the mark consists of the insignia of a municipality.[5] The

---

[4] Application Serial No. 87639750 (the "'750 application") was filed on October 10, 2017, under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), based upon Applicant's claim of first use anywhere and in commerce since 1982 in both classes.

Applicant describes the mark in the application as follows: "The mark consists of a circle with the image of three oranges in front of an orange grove and snow-covered mountains with the words 'COUNTY OF ORANGE' in an arc above the circle and the word 'CALIFORNIA' below the circle. Above the circle in a banner are the words 'PARK RANGER' and below the circle are the words 'PARKS-BEACHES' inside of a banner. All of the aforementioned is inside of a badge shape with the encompassed wording and design superimposed over a half wreath. Inside of the bottom of the shield shape is a geometric shape and at the top of the shield shape are multiple connected quadrilaterals." Color is not claimed as a feature of the mark.

Applicant disclaims the exclusive right to use the wording "PARK RANGER PARKS-BEACHES COUNTY OF ORANGE CALIFORNIA."

[5] March 3, 2018 Office Action at 2 in the '378 application to register the Circular Mark. Citations are to the record in the '378 application, unless otherwise noted.

Page references to the application records refer to the downloadable version of documents from the USPTO's Trademark Status & Document Retrieval system. *See, e.g., In re Peace Love World Live, LLC*, 127 USPQ2d 1400, 1402 n.4 (TTAB 2018). References to the briefs on appeal refer to the Board's TTABVUE docket system. The docket entry number appears before the TTABVUE designation, and the page references, if applicable, appear after it.

refusal was subsequently withdrawn[6] but later reinstated[7] and made final.[8] When the refusal was made final, Applicant appealed and requested reconsideration.[9] After the Examining Attorney denied the request for reconsideration,[10] the appeal resumed.

With regard to the application to register the Badge Mark, the Examining Attorney refused registration of the mark under Section 2(b) of the Trademark Act, 15 U.S.C. § 1052(b).[11] Applicant argued against the refusal, which was then withdrawn, and a Notice of Publication issued.[12] However, the Examining Attorney subsequently requested that jurisdiction of the application be restored,[13] and the refusal to register under Section 2(b) was reinstated.[14] When the refusal was made final,[15] Applicant appealed and requested reconsideration.[16] After reconsideration was denied,[17] the appeal resumed.

---

[6] October 31, 2019 Office Action at 2.

[7] May 7, 2020 Office Action at 2-3.

[8] December 17, 2020 Office Action at 2.

[9] June 15, 2021 Request for Reconsideration after Final ("Req. Recon.").

[10] July 26, 2021 Denial of Req. Recon at 1-2.

[11] August 17, 2018 Office Action in the '750 application.

[12] October 30, 2019 Notice of Publication in the '750 application.

[13] January 15, 2020 Administrative Response in the '750 application.

[14] January 24, 2020 Office Action in the '750 application.

[15] August 10, 2020 Office Action in the '750 application.

[16] February 5, 2021 Req. Recon in the '750 application.

[17] May 17, 2021 Denial of Req. Recon in the '750 application.

The appeals are fully briefed. At Applicant's request, the appeals were consolidated prior to oral argument.[18] We now decide them in this single opinion, s*ee In re Mr. Recipe, LLC,* 118 USPQ2d 1084, 1085 (TTAB 2016) (Board consolidated appeals in two applications on Examining Attorney's request and issued a single opinion), and affirm the refusals to register.

## I. The Circular Mark of the '378 Application

Before addressing the merits, we first address an evidentiary matter.

### A. Evidentiary Matter

Applicant attaches to its appeal brief a copy of a portion of the constitution of the State of California.[19] In her brief, the Examining Attorney does not object to the new evidence nor does she discuss it or otherwise treat it as being of record. Generally, under such circumstances, such evidence could be excluded from consideration. *In re Pedersen,* 109 USPQ2d 1185, 1188 (TTAB 2013) (refusing to consider late-filed evidence submitted with appeal brief even though examining attorney did not explicitly object to the evidence, because examining attorney did not discuss it or otherwise treat it as being of record). However, in this instance, the evidence is not subject to reasonable dispute and therefore we may take judicial notice of it. TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE § 704.12(a) (2022) and cases cited therein.

---

[18] Board Order dated December 16, 2021 appearing at 13 TTABVUE in the '378 application, and 25 TTABVUE in '750 application.

[19] Exhibit to Applicant's brief (7 TTABVUE 26).

### B.    Background

The California Government Code states that a county may adopt a seal, but to do so requires the completion of a two-step process.[20] First, the seal must be adopted by the county Board of Supervisors and, second, "[a] description and impression of the seal shall be filed in the office of the county clerk."[21] Simply put, in order for a seal to become a county's **official** seal, "it **must** be adopted by the Board of Supervisors, and it **must** be filed with the county clerk."[22]

Applicant made of record evidence that it, County of Orange, California, created and adopted an "official" seal over a century ago.[23] The official seal generally consists of a single orange having a stem with three leaves, as shown in one of its color iterations below:[24]



---

[20] Cal. Gov't Code § 25004 attached to the May 16, 2019 Response to Office Action at 10.

[21] *Id.*; Declaration of Thomas A. Miller, para. 2 ("Miller Decl."), attached to the June 15, 2021 Req. Recon. at 37.

[22] Applicant's brief, p. 9 (7 TTABVUE 10).

[23] Declaration of Chris Jepsen, para. 2 ("Jepsen Decl.") attached to the June 15, 2021 Req. Recon. at 36; Minutes of August 5, 1889 Board of Supervisors meeting, para. 3, attached as Exhibit 1 to the August 29, 2018 Response to Office Action at 5.

[24] Jepsen Decl., paras. 2, 4 attached to the June 15, 2021 Req. Recon. at 36; Miller Decl., para. 3, attached to the June 15, 2021 Req. Recon. at 37; image of "official" seal is shown in the November 6, 2020 Response to Office Action at 16. Additional images containing this emblem in different colors are shown in the November 6, 2020 Response to Office Action at 67-68.

The image of a single orange having a stem with three leaves became "the emblem for all seals of Orange County," excepting the seal of the Superior Court, by motion at a meeting of the Board of Supervisors on August 5, 1889, and, according to the minutes of that meeting, the design was proposed and "carried unanimously".[25]

According to Cynthia J. Sandoval, the Board Services Specialist for the Clerk of the Board of Supervisors for Applicant, this single orange design is and has been the only "official" seal of the County.[26] There is no other "official" seal.[27] That is, the "official" seal has not been supplanted or discarded by the County.[28]

The "official" seal of Applicant as compared to the proposed Circular Mark is shown below:





Official Seal　　　　Circular Mark

---

[25] Minutes of August 5, 1889 Board of Supervisors meeting, para. 3, attached as Exhibit 1 to the August 29, 2018 Response to Office Action at 5.

[26] Declaration of Cynthia J. Sandoval, paras. 1, 3 at 11, attached to the May 16, 2019 Response to Office Action at 11.

[27] *Id*. at para. 3. While the evidence indicates that the orange-stem-leaves design was adopted as the emblem for all seals of Orange County (except one, i.e., the seal of the Superior Court), and Applicant made of record multiple County seals, for purposes of these consolidated appeals we accept arguendo Applicant's position that the orange-stem-leaves emblem is the one "official" seal of Orange County.

[28] Jepsen Decl., para. 2, attached to the June 15, 2021 Req. Recon. at 36.

C. Analysis

Section 2(b) of the Trademark Act, 15 U.S.C. § 1052(b), prohibits registration on either the Principal or Supplemental Register of a mark that "[c]onsists of or comprises the flag or coat of arms or other insignia of the United States, or of any State or municipality, or of any foreign nation, or any simulation thereof." This section imposes an absolute bar against registration of a mark that consists of or contains a flag, coat of arms or other insignia, and reflects the sentiment that such symbols are indicia of government authority that ought to be reserved for signifying the government. *In re Gov't of Dist. of Columbia*, 101 USPQ2d 1588, 1597 n.14 (TTAB 2012), *aff'd sub nom. In re City of Houston*, 731 F.3d 1326, 108 USPQ2d 1226 (Fed. Cir. 2013).

"The registration bar was not enacted to protect official prerogatives or preserve official symbols from desecration. Rather, the bar represents a more general determination that [government] insignia are not appropriate subjects of trademark law at all. Trademark law concerns itself with goods and services in commerce." *Renna v. Cnty. of Union*, 88 F. Supp. 3d 310, 324 n.9 (D.N.J. 2014). As a leading authority on trademark law explains, the absolute bar to registration under Section 2(b) is founded upon the idea that "these kinds of official governmental insignia . . . should not be registered as symbols of origin for commercial goods and services[ ]" because they "ought to be kept solely to signify the government". 3 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 19:78 (5th ed. 2022).

Applicant argues that the proposed mark does not constitute "insignia" because it is not an "official" seal of Applicant, and, even if it were, registration is not precluded because Applicant is not a "municipality."[29] We consider each argument in turn.

### 1. The Circular Mark Constitutes "Insignia"

The record contains multiple definitions of the term "insignia", which is defined as both "a distinguishing mark or sign"[30] and "an emblem."[31] "Emblem" is defined as "a device, symbol, or figure adopted and used as an identifying mark."[32]

Although the Circular Mark has not undergone the two-step process to become an "official" seal,[33] it is displayed prominently by Applicant to signify broad County of Orange authority, records, functions and facilities. For example, the earliest display of the proposed mark can be traced back to its appearance on the cover of a 1948 book of County of Orange ordinances.[34]

Additionally, Applicant displays the proposed mark on its website. As shown below, the proposed mark appears prominently at the top and bottom of the site (here

---

[29] Applicant's brief, pp. 1, 2-18 (7 TTABVUE 2, 3-19).

[30] MERRIAM-WEBSTER DICTIONARY (merriam-webster.com) definition attached to the November 27, 2018 Office Action at 62.

[31] AMERICAN HERITAGE DICTIONARY (ahdictionary.com) definition attached to the November 27, 2018 Office Action at 68.

[32] MERRIAM-WEBSTER DICTIONARY definition accessed on May 12, 2021. The Board may take judicial notice of dictionary definitions, including online dictionaries that exist in printed format or have regular fixed editions, and we do so here. *In re Cordua Rests. LP*, 110 USPQ2d 1227, 1229 n.4 (TTAB 2014), *aff'd*, 823 F.3d 594, 118 USPQ2d 1632 (Fed. Cir. 2016).

[33] Jepsen Decl., para. 3, attached to the June 15, 2021 Req. Recon. at 36.

[34] *Id.*

describing Applicant's shelters[35]) and in each of the three email subscription boxes on the right, as indicated by the arrows:



---

From this webpage, one can click a link to access information about other Applicant services, such as business licenses, and to pay/view a property tax bill.[36] Applicant also displays its proposed Circular Mark on its "About the Board" webpage describing the Orange County Board of Supervisors,[37] which is described as an authoritative body charged with "oversee[ing] the management of the County government and its many special districts. . . . [and, i]n its legislative duties, . . . adopt[ing] ordinances, resolutions and minute orders within the limits prescribed by State law."[38]

The Circular Mark also appears on the website for the Clerk-Recorder's office. The Clerk-Recorder's office manages many official government documents, including property records, marriage licenses, and birth and death certificates, and it performs marriage ceremonies.[39]

Additionally, the proposed mark is displayed prominently on signage for County of Orange government offices, such as the Hall of Administration, which houses, among other things, the Board of Supervisors.[40] The proposed mark appears on other signage for the Old Orange County Courthouse,[41] the Hall of Records and Hall of

---

[36] *Id.*

[37] *Id.* at 20-25.

[38] *Id.* at 21.

[39] *Id.* at 10.

[40] *Id.* at 11.

[41] *Id.* at 12.

Finance,[42] the Superior Court of California,[43] and the Orange County Sherriff.[44] The proposed mark is shown below on the website for the Orange County Clerk-Recorder's office, which itself shows the proposed mark on the Clerk-Recorder's roadway signage:[45]



---

[42] *Id.* at 13-15.

[43] *Id.* at 16.

[44] *Id.* at 17.

[45] *Id.* at 10.

Below is a representative screen shot of the proposed mark used on signage to denote County of Orange facilities, such as the Superior Court of California:[46]



Additionally, the proposed mark is prominently displayed on the wall of the meeting room for the Orange County Board of Supervisors,[47] as shown in this photograph which appeared in an online article reporting on the Board of Supervisors' activities:[48]

---

[46] *Id.* at 16.

[47] *Id.* at 19, 26.

[48] *Id.* at 26.



## Orange County Supervisors Revolt Against California's Sanctuary Law

By RICHARD GONZALES, NPR · MAR 27, 2018

Share    Tweet    Email

*The Orange County Board of Supervisors during a meeting in Santa Ana, Calif., on Tuesday. The board voted to oppose California's sanctuary law for undocumented immigrants.*

Still further, the proposed mark is shown on a map for the Orange County (OC) Civic Center, which depicts the name, address and location of various government facilities by color: Applicant facilities in orange, city facilities in green, state facilities in blue, and federal facilities in black.[49] The County of Orange facilities indicated on this map reflect functions that are traditionally and uniquely provided by a government: the district attorney's office, the health care agency and vital records office, the law library, the men's and women's jail, the coroner's office, the Old County

---

[49] *Id.* at 28.

Courthouse, the Hall of Administration, and the sheriff forensic science services building.[50]



Similarly, the proposed mark appears on a map showing the Orange County General Plan – a map that illustrates land-use designations, such as rural residential, suburban residential, urban residential, commercial and the like:[51]

---

[50] *Id.*

[51] *Id.* at 29.



Based on the foregoing discussion and evidence, we find that the prominent and repeated display of the proposed Circular Mark to denote traditional government records, functions, and facilities would reasonably lead members of the general public to perceive the proposed mark as an "insignia" of Applicant within the meaning of Section 2(b) of the Trademark Act. As shown above, the proposed mark serves as "a distinguishing mark or sign"[52] and an "emblem" of Applicant's authority.[53] Although the proposed mark has not been adopted as an "official" seal of Applicant, this does

---

[52] MERRIAM-WEBSTER DICTIONARY attached to the November 27, 2018 Office Action at 62.

[53] AMERICAN HERITAGE DICTIONARY attached to the November 27, 2018 Office Action at 68.

not preclude its functioning as an insignia within the meaning of Section 2(b) of the Trademark Act. Notably, Section 2(b) does not distinguish between "official" and "unofficial" insignia. That is, formal adoption is not required for insignia to fall under the prohibition of Section 2(b) based on a literal reading of the Act.

Applicant argues that if the Office's position were to prevail, it would effectively dictate the official seal of the County of Orange, which would contradict the will of Applicant and its governing Board of Supervisors, with whom that power is vested.[54] We disagree. Our decision as to whether the proposed Circular Mark constitutes an "insignia" under the Trademark Act has no effect on any actions by the Board of Supervisors in its decision to adopt (or not) an official seal. The Trademark Trial and Appeal Board is an administrative tribunal of the USPTO empowered to determine the right of a party to register its proposed mark. Trademark Act §§ 17, 18, 20, 24, 15 U.S.C. §§ 1067, 1068, 1070, 1092. *See Conolty v. Conolty O'Connor NYC LLC*, 111 USPQ2d 1302, 1309 (TTAB 2014) (registration is the only issue within the Board's limited jurisdiction). The Board has no authority to dictate the official seal of Applicant and does not purport to do so. With this decision, we merely determine that the proposed mark constitutes an insignia within the meaning of Section 2(b) of the Trademark Act for purposes of federal registration.

---

[54] Applicant's brief, p. 11 (7 TTABVUE 12).

 2. Applicant Is a "Municipality" for Purposes of Section 2(b) of the Trademark Act

As previously mentioned, Section 2(b) of the Trademark Act bars registration of an insignia "of any state **or municipality** of the United States …." 15 U.S.C. § 1052(b) (emphasis added); s*ee Ceccato v. Manifattura Lane Gaetano Marzotto & Figli, S.p.A.*, 32 USPQ2d 1192, 1196 (TTAB 1994) (noting that "it would appear that the reference to 'municipality' in the Statute is to a municipality in the United States").

Applicant identifies itself in the record by name as County of Orange and as a political subdivision of the state of California.[55]

The Examining Attorney made of record evidence that the term "municipality" means "[a] political unit, such as a city, town, or village, that is incorporated for local self-government."[56] Relying on website printout evidence from ballotpedia.org, the Examining Attorney argues that this evidence shows Orange County, California to be a "charter county of the state which the state **recognizes** as its own governmental body upon adoption of a charter …."[57] The Examining Attorney also argues that Applicant meets the definition of "municipality," as the evidence from Applicant's own website establishes that Applicant is a local governmental authority.[58] Continuing, the Examining Attorney argues that "[e]ven if applicant is not technically a

---

[55] Application at 1.

[56] November 27, 2018 Office Action at 7.

[57] December 17, 2020 Office Action at 3.

[58] *Id.* at 3.

municipality, the evidence of record from applicant's own website, ocgov.com, establishes that applicant is a local governmental entity functioning as such."[59]

Applicant argues that it is not a "municipality" under the definition proffered by the Examining Attorney (as counties are not "incorporated" for local self-government, among other reasons) or under California state law. Applicant argues that:

> Despite the overwhelming authority that renders the Office's position untenable, the Office has nevertheless repeatedly and baldly asserted that Orange County is a municipality. There is no logical or legal basis to support this position, so the Office has clung to this assertion with an ill-founded reliance on websites lacking credibility, and a misinterpretation of the effect of a county's adoption of a charter. Specifically, the Office cites an unvetted, third-party website known as ballotpedia.org. The site lists Orange County, California as a charter county of the state, which the Office argues "**recognizes** as its own governmental body upon adoption of a charter and the subsequent evidence citing Section 3, Article XI of the California Constitution specifies the provisions for such charter counties." While this statement is irrelevant to whether the County of Orange is a municipality, the Office further defines "'municipality' as 'a political unit, such as a city, town, or village, incorporated for **local self-government**'" and argues the "evidence from ocgov.com establishes applicant is a local governmental agency under the common definition of 'municipality.'" *Id*. The conclusion drawn by the Office demonstrates a misunderstanding of what is meant by the State's recognition of a charter adopted by a county, and the issue of 'self-government,' as it pertains, or does not pertain, to a county that chooses to adopt a charter. Further, the Office misstates the California Constitution.
>
> A municipality is defined as "a **municipal corporation**: a city, town, borough, or incorporated village." Applicant is the County of Orange, a county in the State of California. Unlike a city (municipality), it is not incorporated for local self-government; rather, it is formed specifically by legislative enactment from the State. A county is **not** a municipal corporation, or any of the listed bodies identified in the definition of municipality. Consistent with the above definition, the California Supreme Court has made clear, "**[a] county is not a corporation for municipal purposes**, within the meaning of section 7 of article XI of the constitution." *Kahn v. Sutro*, 114 Cal. 316, 319 (1886). This view is also consistent with

---

[59] Examining Attorney's brief (9 TTABVUE 5).

(1) the dictionary definition offered by the Office itself; (2) the case law which is replete with numerous reported decisions that have held that use of the term "municipality" does not encompass counties, *see, e.g., Einer v. Rivera*, 346 P3d 1197, 1204 (Ct. App. N.M. 2015) ("Although there may be certain overlap or parallel governing principles with respect to municipalities and counties, and our courts have at times referred to municipalities and counties in a common way, the two are not the same."); and (3) leading treatises, see, e.g., 1 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS, § 2:45, at 283, 286 (3d 2010) ("[Municipal Corporations] and counties have been declared to be separate and distinct legal entities. . . [T]he county is not, strictly speaking, a municipal corporation"). Municipalities are cities, and a county is—quite simply and unequivocally—not a city.[60]

Even assuming, as Applicant argues, that (1) Applicant was formed by specific legislative enactment,[61] (2) Applicant chose to enact a charter on March 5, 2002, long after Applicant was formed by specific legislative enactment,[62] (3) the California Constitution allows a county to adopt a charter **after** formation under certain conditions,[63] and (4) a county may not be considered a "municipality" under California law,[64] none of this impacts our decision.

For purposes of interpreting Section 2(b) of the Trademark Act, the exact nature of the formation of Applicant, i.e., whether by specific legislative enactment or otherwise, Applicant's adoption or not of a charter and the timing of any such adoption, and whether or not Applicant was "incorporated" for self-government, are

---

[60] Applicant's brief, p. 3-4 (7 TTABVUE 4-5) (some citations omitted).

[61] *Id*. at 4 (7 TTABVUE 5).

[62] *Id*.; Miller Decl., para. 5, attached to the June 15, 2021 Req. Recon. at 38. The Orange County Charter is attached as Exhibit 15 to the June 15, 2021 Req. Recon. at 93-97.

[63] Applicant's brief, p. 4 (7 TTABVUE 5).

[64] *Kahn v. Sutro*, 114 Cal. 316, 319 (1886) attached as Exhibit 22 attached to the June 15, 2021 Req. Recon. at 257-70.

irrelevant. The fact remains that Applicant has some powers of self-government, as demonstrated by the evidence above and as discussed further below.

As an initial matter, we take judicial notice of a different definition of the term "municipality." BLACK'S LAW DICTIONARY defines "municipality" as:

1. A city, town, or other local political entity with the powers of self-government.[65]

Applicant's own evidence acknowledges that the California Constitution itself provides that a county may have some powers of self-government. For example, the "California Constitution authorizes a county to make and enforce local ordinances that do not conflict with general laws. A county also has the power to sue and be sued, … and levy and collect taxes authorized by law."[66] Further, Section 3 of the California

---

[65] BLACK'S LAW DICTIONARY (11th ed. 2019).

[66] Exhibit 16 attached to the November 6, 2020 Response to the Office Action at 87.

Indeed, in a law review article by Jared Eigerman, the Deputy City Attorney for the City and County of San Francisco, California, Mr. Eigerman wrote that his article "examines California's most basic form of local government, **the county**." Eigerman, *California Counties: Second-Rate Localities or Ready-Made Regional Governments?*, 26 Hastings Const. L.Q. 621, 626 (1999) (emphasis added). Mr. Eigerman also wrote that California "counties have their own source of power. They have a tax base and their own identifiable constituency." *Id.* at 626.

As for the distinction between cities and counties, Mr. Eigerman writes:

> In 1850, after creating counties, the California Legislature acted to allow the incorporation of cities. Today's State Constitution commands the Legislature to prescribe a uniform procedure for city formation and provide for city powers. However, the State Constitution does not mandate the creation of cities, as it does of counties. Instead, county residents must themselves petition for incorporation as a city. California's over 450 cities are "municipal corporations," formed for the purposes of local government, and, unlike counties, they are not subdivisions of the State. The Legislature has authorized cities to exercise powers that are often identical to those of counties. The result is that counties are left to exercise their powers only in unincorporated portions of their territories.

*Id.* at 629-30.

Constitution provides that "**For its own government, a county** or city may adopt a charter by majority vote of its electors voting on the question."[67] Thus, on its face, it appears that the California Constitution contemplates that a county shall have some form of local "powers of self-government."

Further, Thomas A. Miller, Applicant's Chief Real Estate Officer and otherwise long-time employee of Applicant, acknowledged that Applicant elected to enact a charter because it "was motivated by the desire to have the ability to amend a very limited number of governing laws, including retirement and pension benefits, and establishing a Campaign Finance and Ethics Commission."[68] Amending one's own governing laws is a form of "self-government" as it constitutes controlling one's own affairs,[69] even if it is limited in some ways.

Additionally, Applicant's own website broadly describes the functions of the Board of Supervisors as that of "oversee[ing] **the management of the County government** and its many special districts" as well as "adopt[ing] ordinances, resolutions and minute orders within the limits prescribed by State law."[70] The Board of Supervisor's oversight of the management of the county government presumes that Applicant has at least some minimum power of self-government.

---

[67] Cal. Const., art. XI § 3(a) (emphasis added), attached to Applicant's brief (7 TTABVUE 26).

[68] Miller Decl., para. 5, attached to the June 15, 2021 Req. Recon. at 38.

[69] We take judicial notice of the definition of "self-government", which is defined as: "1. Government controlled and directed by locals and not by outsiders. 2. Control of one's own affairs." BLACK'S LAW DICTIONARY. *Cordua Rests. LP*, 110 USPQ2d at 1229 n.4 (Board may take judicial notice of dictionary definitions, including online dictionaries that exist in printed format).

[70] May 7, 2020 Office Action at 21 (emphasis added).

Consequently, based on the foregoing discussion and evidence, we find that Applicant is a "municipality" for the limited purpose of determining whether Applicant may register its proposed Circular Mark under Section 2(b) of the Trademark Act.

Our finding here is consistent with the result reached by the *Renna* Court. *Renna v. Cnty. of Union*, 88 F. Supp. 3d 310, 317-18 (D.N.J. 2014). By way of background, Union County, a county in New Jersey, sought to register its seal (shown below) with the USPTO:



for various services, including "County administrative services, business administration and management of County services".[71] The USPTO refused to register the proposed mark and the refusal was made final. *Id*. During the time that the application was pending, Union County sent a cease and desist letter to Ms. Renna, alleging infringement of its "registered" mark. *Id*. at 311-14.

Ms. Renna filed a declaratory judgment action in District Court, alleging that Union County had no trademark rights with respect to its seal because the seal was not registrable under the Trademark Act and not entitled to protection from infringement. *Id*. at 316. On cross motions for summary judgment, the *Renna* Court

---

[71] The application, now abandoned, was filed on July 1, 2010 and accorded Ser. No. 76703608.

acknowledged the Union County mark was an "insignia" of a "municipality" and was explicitly barred from registration under Section 2(b). *Id.* at 316-17. In citing to the USPTO's refusal to register the mark as insignia of a municipality under Section 2(b), the *Renna* Court wrote, "Here the USPTO was on solid ground." *Id.* at 317.

Applicant argues that because Applicant was "**created and is governed by**" California law, California law should be treated as controlling for this issue, "as failure to do so would constitute the Office elevating its own view of the California governmental organization over that of the State of California itself – a sure violation of California's sovereignty and basic principles of federalism and unwarranted intrusion into a matter squarely for the State of California to determine."[72]

We disagree. "[I]n the absence of a plain indication to the contrary, it is to be assumed when Congress enacts a statute that it does not intend to make its application dependent on state law." *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 119 (1983) (cleaned up; citation omitted); *see also Augustine v. Dep't of Veterans Affs.*, 429 F.3d 1334, 1340 (Fed. Cir. 2005) (same); *Spina v. Dep't of Homeland Sec.*, 470 F.3d 116, 126 (2d Cir. 2006) ("unless Congress plainly manifests an intent to incorporate diverse state laws into a federal statute, the meaning of a federal statute should not be dependent on state law") (cleaned up; citations omitted). Here, there is no such indication that the statute's meaning should be determined by reference to state law.

---

[72] Applicant's brief, p. 4 (7 TTABVUE 5).

Further, Applicant's approach would cause the term "municipality" to be interpreted differently depending on the nature of the laws of the state in which an applicant is formed. This approach carried to its logical extreme could result in the Office's examining attorneys considering at least 50 different definitions or legislative constructions of the term "municipality." That is simply an unworkable solution that could result in inconsistent application of the Trademark Act. *See, e.g., Lockhart v. Napolitano*, 573 F.3d 251, 259–60 (6th Cir. 2009) (state law should not be used to interpret terms in a federal statute if to do so would "frustrate a federal statute's purposes").

     3.     Applicant's Prior Registrations and Third-Party Registrations

Applicant argues that the proposed Circular Mark should be allowed to register because Applicant has already received a registration for a mark that includes a substantial portion of the very same mark at issue here: Reg. No. 5974753, the "'753 Registration".[73] The center portion of the mark of the '753 Registration is nearly identical to the center portion of the Circular Mark, as shown below, and used in connection with, in part, similar services.[74]

---

[73] A copy of the certificate of registration is attached as Exhibit 2 to the June 15, 2021 Req. Recon. at 43-44.

[74] Applicant's brief, pp. 18-19 (7 TTABVUE 19-20). The Examining Attorney argued that the center image of the marks was not the same and that the center image in the mark of '753 Registration is "more stylized and more spatially compressed" than the center image in the Circular Mark. Examining Attorney's brief (9 TTABVUE 11). However, Applicant is adamant that the "interior portion is exactly the same design, regardless of some perceived compression." Applicant's Reply brief, p. 9 (10 TTABVUE 10).

 

Mark of '753 Registration  Circular Mark

It is true that the center portion of the mark of the '753 Registration is similar to the center portion of the Circular Mark and that the marks share the terms "Orange" and "County". While we have found the Circular Mark in its entirety to be an insignia, only part of the Circular Mark – the center portion i.e., the image only – is present in substantial form in the mark of the '753 Registration. It is the Circular Mark in its entirety that we have found to be an insignia; we make no determination as to whether the center portion alone constitutes an insignia. Moreover, much of the rationale for the decision here rests on the perceived impression of the Circular Mark due to the nature of its use by Applicant as shown by the evidence discussed above, and we do not know – on this record – whether the mark of the '753 Registration is used or would be perceived in a comparable way. Consequently, Applicant's arguments that the registration of the mark of the '753 Registration should compel registration of the Circular Mark are not persuasive. *In re Nett Designs, Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001) ("Even if some prior registrations had some characteristics similar to Nett Designs' application, the [US]PTO's allowance of such prior registrations does not bind the [Trademark Trial and Appeal] Board or this court."); *In re Finisar Corp.*, 78 USPQ2d 1618, 1621 (TTAB 2006) (each application for registration must be considered on its own).

Applicant also argues that it has registered the composite word-and-design marks OC PARKS and OC ZOO (shown below) for various recreational and entertainment services, such as providing guided hiking tours and zoos:[75]



As neither of these marks was refused registration under Section 2(b) by the USPTO, Applicant argues that the Circular Mark should similarly be allowed to register.[76]

We disagree. The above marks differ significantly in nature from the Circular Mark. The evidence discussed in detail above shows that the Circular Mark is widely used to denote traditional government records, functions, and facilities, and would be perceived as insignia as it denotes government authority. *In re U.S. Dept. of the Interior*, 142 USPQ 506, 507 (TTAB 1964). The above marks, however, are more whimsical, and the identified services are not the type of services that are uniquely and exclusively provided by a government — hiking tours and zoos are at least sometimes provided by private companies and individuals, for example. We also note that Section 2(b) does not disqualify municipalities or states from registering trademarks. It prohibits them only from registering their flag, coat of arms, or other insignia as trademarks.

---

[75] *Id*. Copies of the certificates of registration for the OC PARKS and OC ZOO marks are attached as Exhibit 23 to the June 15, 2021 Req. Recon. at 272-78.

[76] Applicant's brief, p. 9 (7 TTABVUE 10).

Applicant argues that its Circular Mark should be allowed to register because it is very similar in nature to the marks registered by, for example, the City of Rossford and the City of Leavenworth, all of which were allowed to register for various municipality services.[77] Again, this argument is unpersuasive as the existence of these third-party registrations does not outweigh evidence discussed in detail above that the Circular Mark consists of or comprises an insignia of a municipality and is therefore unregistrable. *Gov't of Dist. of Columbia*, 101 USPQ2d at 1601-02 ("The registration of three marks comprising official seals of municipalities neither renders the statute unclear nor provides applicant any rights based on them. Each application must be examined on its own merits, based on the administrative record.").

### D. Summary Regarding the Circular Mark of the '378 Application

We find that the Circular Mark of the '378 application constitutes an insignia of a municipality and therefore affirm the refusal to register it under Section 2(b) of the Trademark Act, 15 U.S.C. § 1052(b).

## II. The Badge Mark of the '750 Application

Before turning to the merits of the application to register the Badge Mark, we first address an evidentiary matter.

### A. Evidentiary Matters

Applicant attached to its appeal brief the following new evidence: (1) the Declaration of Thomas A. Miller, Applicant's Chief Real Estate Officer; (2) the

---

[77] *Id.* at 22 (7 TTABVUE 23) citing June 15, 2021 Req. Recon. at 106-250.

Declaration of Chris Jepsen, the Assistant Archivist for the Orange County Archives; and (3) a printout of California Government Code § 25004.[78] The Examining Attorney objected to this evidence, arguing that the record should be complete prior to the appeal.[79] As mentioned above, it is well settled that the record should be complete prior to appeal. Because the Examining Attorney has properly objected, we sustain the objection and will not consider either of the declarations in the context of the '750 application.[80] Trademark Rule 2.142(d), 37 C.F.R. § 2.142(d); *In re Fallon*, 2020 USPQ2d 11249, at \*2 (TTAB 2020) (copy of applicant's patent drawing first submitted as exhibit to applicant's brief not considered). However, we exercise our discretion and take judicial notice of the excerpt of the California Government Code. We hasten to add that even if the declarations were timely filed in the '750 application, their inclusion in the record for this application would not change the result.

B.    Analysis

As mentioned above, Section 2(b) of the Trademark Act precludes registration of a mark that "**[c]onsists of or comprises** … insignia of … [any] municipality …." 15 U.S.C. § 1052(b) (emphasis added). In construing the meaning of identical "consists of or comprises" language in Section 2(a) of the Trademark Act, the Federal Circuit held that "[t]he word 'comprises' at the time of the statute's enactment in 1905, meant

---

[78] Exhibits 1-3 attached to Applicant's brief (15 TTABVUE 26-33) in the '750 application to register the Badge Mark.

[79] Examining Attorney's brief (17 TTABVUE 7) in the '750 application to register the Badge Mark.

[80] The same declarations were submitted timely by Applicant during prosecution of the '378 application, and we appropriately considered them in context with that application.

'includes.'" *In re Fox*, 702 F.3d 633, 105 USPQ2d 1247, 1250 (Fed. Cir. 2012) (citation omitted), *overruled on other grounds*, *Iancu v. Brunetti*, 588 U.S. __, 139 S. Ct. 2294, 2019 USPQ2d 232043 (2019). "Section 2(b) thus prohibits registration of a mark that *includes* [an insignia] of a [municipality] or any simulation thereof." *In re Fam. Emergency Room, LLC,* 121 USPQ2d, 1886, 1889 n.2 (TTAB 2017).

Applicant admits that the Circular Mark is subsumed in its entirety by the Badge Mark,[81] as shown below:

 

Circular Mark        Badge Mark

Having found above that the Circular Mark consists of an insignia of a municipality, we now find that the Badge Mark comprises an insignia of a municipality as it encompasses the Circular Mark in its entirety. Consequently, registration is barred under Section 2(b) of the Trademark Act, 15 U.S.C. § 1052(b).

---

[81] Applicant's Request for Consolidated Oral Hearings (24 TTABVUE 2) in the '750 application to register the Badge Mark.

C.    Summary Regarding the Badge Mark of the '750 Application

We find that the Badge Mark of the '750 application comprises an insignia of a municipality and therefore affirm the refusal to register it under Section 2(b) of the Trademark Act, 15 U.S.C. § 1052(b).

## III.    Conclusion

We have carefully considered all of Applicant's evidence and arguments. We conclude that Applicant's proposed marks as depicted in the subject applications consist of or comprise insignia of a municipality, and that, as a result, registration is barred by Trademark Act Section 2(b), 15 U.S.C. § 1052(b).[82]

## IV.    Decision

The refusals to register Applicant's proposed marks under Trademark Act Section 2(b) are affirmed.

---

[82] This decision applies only to the proposed marks in the subject applications before us today. Nothing in this decision should be read as an opinion on the registrability of any other mark or the validity of any registration owned by Applicant or any third party.